31st JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON DAVIS

STATE OF LOUISIANA

NO. C-94-19                                                  DIVISION ____

PREMIENCE ENERGY, LLC

VERSUS

DUFRENE PIPE COMPANY, INC.

FILED: 3/31/20

_____
CLERK

## FIRST AMENDED AND RESTATED PETITION FOR BREACH OF CONTRACT, BREACH OF EXPRESS AND IMPLIED WARRANTIES, AND NEGLIGENCE

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Premience Energy, LLC (hereinafter referred to as either "*Premience*" or as "*Plaintiff*"), who files this Petition for Breach of Contract, Breach of Express and Implied Warranties, and Negligence (the "*Petition*"), and respectfully represents as follows:

### Parties and Venue

1.

Plaintiff, Premience, is a Delaware limited liability company authorized and doing business in Louisiana, with a principle place of business in Sugar Land, Texas.

2.

Made Defendant herein are the following:

(a) Dufrene Pipe Company, Inc. ("*Dufrene*"), which, upon information and belief, is a Louisiana corporation with its principle place of business in the Parish of Lafayette;

(b) IOS/PCI, LLC, ("*IOS*") which, upon information and belief, is a Louisiana limited liability company, doing business under the trade name: "IOS" with its principal place of business in the Parish of East Baton Rouge; and

(c) Energy Technology Manufacturing & Threading, LLC ("*ENGT*") which, upon information and belief, is a Louisiana limited liability company, not in good standing with the State of Louisiana for failure to file an annual report, with its principal place of business in the Parish of Lafayette.

3.

Venue is proper in this Court pursuant to Louisiana Code of Civil Procedure article 74 as the damages were sustained in Jefferson Davis Parish. Venue is also proper under article 76.1 as the contract was to be performed in Jefferson Davis Parish.

### Factual Allegations

4.

The Louisiana Office of Conservation approved Premience's permit to drill the JV Miller No. 2 Well, Serial No. 251179 (the "*Well*"), in Jefferson Davis Parish on July 26, 2018.

5.

The approved and targeted zone for completion was the Homeseekers "C" Sand (the "*Completion Zone*"). The Completion Zone is a high-pressure zone containing formation pressure of 4,650 pound-force per square inch (psi). Because of the formation pressure, Premience required 5 ½" 17lb/ft N-80 grade casing. 17lb/ft N-80 casing is rated to withstand up to 6,390 psi of pressure without collapsing.

6.

To secure the needed string of casing pipe, Premience entered into an agreement with Dufrene in August 2018. Under the agreement, Dufrene agreed to sell, and Premience agreed to purchase, approximately 9,700 feet of 5 ½", 17 lb/ft, N-80 grade casing with a collapse pressure rating of 6,390 psi. (hereinafter, the "*Agreement*").

7.

Dufrene represented to Premience that, although the casing may be in used condition, it would be reconditioned and undergo hydrostatic testing, drift testing, and electromagnetic inspection. These tests would ensure the casing was in compliance with API specification for 5 ½", 17 lb/ft, N-80 grade casing.

8.

Premience required the N-80 grade casing because its higher quality would permit its use in the high-pressure Completion Zone. Other grades of casing, such as 15.5lb/ft K-55, would be inadequate for use in the high-pressure Completion Zone. The required specifications for each type of casing are set forth by the American Petroleum Institute ("*API*").

9.

Dufrene supplied and delivered to Premience certain 5 ½" casing which Dufrene represented was N-80 grade, as per the terms of the Agreement.

10.

Dufrene acquired the 5 ½" casing it delivered to Premience through a consignment arrangement it had entered into with Mr. Robert Carpenter. Mr. Carpenter delivered the casing to ENGT for thread inspection, threading and testing pursuant to Dufrene's instructions.

11.

Dufrene retained ENGT to inspect the threads on the casing, re-thread the casing where appropriate, perform hydrostatic testing, conduct a full length drift on each joint of casing and to inspect the wall of the casing for acceptable thickness and appropriate grade.

12.

On information and belief, ENGT failed to properly inspect the wall of more than 30 joints of the casing and failed to properly grade more than 30 joints of the casing.

13.

Upon completion of its services, ENGT had the 5 ½" casing delivered to IOS for further inspection, grading, color-coding and banding pursuant to Dufrene's instructions.

14.

Dufrene retained IOS to (a) run EMI's (electromagnetic inspections) on each casing joint to determine the wall thickness of each joint of casing and to identify imperfections in the casing, (b) run SEA's (special end area inspections) on each casing joint to determine if there were any wall thickness or imperfection issues in the last 18 inches or so of each end of each joint of the casing, (c) color-code and band each joint of casing to show the joint's weight and grade and whether the joint has been tested and/or inspected.

15.

On information and belief, IOS failed to properly inspect the wall of more than 30 joints of the casing, failed to properly grade more than 30 joints of the casing and failed to properly color-code and band (or label) more than 30 joints of the casing.

16.

Upon completion of its services, IOS had the 5 ½" casing delivered to Dufrene's pipe yard for sale and/or rental to one or more exploration companies by Dufrene.

17.

On or about September 26, 2018, Premience began to run the casing supplied by Dufrene (and inspected and tested as described above by ENGT and IOS) into the Well. While running the casing in the Well, the casing string lost weight, indicating the casing string had stopped moving downhole. Premience attempted to pick up on the casing string using approximately 200,000 lbs. of force. No movement occurred. The rig then attempted to pull the casing using 250,000 lbs. of force. While the rig was increasing from 200,000 lbs. to 250,000 lbs. of force, the casing parted at approximately 230,000 lbs. of force.

18.

After several attempts were made to move the casing string up or down, operations at the drill site ceased. In order to quantify the extent of the casing problem, Premience contracted with a third party to run an UltraSonic Imager ("*USI*") downhole to determine the condition of the casing string. The USI identified thirty-four (34) joints of casing that were 15.5 lbs./ft casing instead of the expected (and contracted for) 17 lbs/ft casing.

19.

It became apparent after the USI run that certain joints of the casing supplied by Dufrene were not the N-80 grade that had been requested, but were instead K-55 grade. K-55 casing has a collapse pressure of 4,040 psi and a joint strength rating of 239,000 lbs. of force, which is below the required strength needed to safely complete the JV Miller No. 2 Well. The USI located and identified inadequate joints of casing as deep as 9,077 feet.

20.

As of the filing of this Petition, Premience has accrued over $520,000 in costs and expenses in its efforts to remediate the casing failure caused by the deficient casing supplied by Dufrene. Additional costs and expenses are expected to accrue as a direct result of the deficient casing supplied by Dufrene, including the costs, expenses and losses that will be incurred in completing and/or attempting to recomplete, side-track or re-drill the JV Miller No. 2 Well to

capture and produce the remaining productive sands and zones logged in the JV Miller No. 2 Well. Specifically, additional drilling and casing operations required to develop the "Homeseekers B" formation are estimated to cost in excess of $1,500,000.

21.

It is unknown at this time if Premience will be able to fully develop the other productive sands and zones logged in the Well due to the deficient casing provided by Dufrene and placed downhole. Due to the failure of the deficient pipe provided by Dufrene, Premience must now undertake risky "block squeeze" operations to develop and complete the hydrocarbon-bearing sands above the "Homeseekers B" formation. Currently, Premience has logged nine (9) known hydrocarbon-bearing formations that will require "block squeeze" operations in order for completion. Further, while not guaranteeing successful development of the different sands, the risky "block squeeze" operations are estimated to cost $630,000 collectively.

## Claim One – Dufrene Breach of Contract

22.

Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding Paragraphs as though those allegations were set forth herein in their entirety.

23.

Contrary to the terms of the Agreement, Dufrene supplied Premience with casing that did not meet the specification standards for N-80 grade casing. Upon information and belief, Dufrene supplied certain K-55 grade casing pipe intermixed with N-80 grade casing pipe. Dufrene did not inform Premience of this, nor did Premience become aware of the deficient casing quality until after the USI was run downhole by a third party.

24.

Dufrene's actions constitute a direct breach of the Agreement. Dufrene is liable for the damages caused by its failure to perform under the Agreement, which damages are measured by the loss sustained and the profits of which Premience has been deprived. LA. CIV. CODE arts. 1994; 1995.

## Claim Two – Dufrene Breach of Express and Implied Warranties

25.

Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding Paragraphs as though those allegations were set forth herein in their entirety.

26.

Additionally or alternatively, Dufrene's actions constitute a breach of express and implied warranties. With knowledge of its intended use, Dufrene supplied certain 5 ½" casing to Premience, representing the casing pipe as N-80 grade. As such, Dufrene warranted the casing would meet the API specifications for quality.

27.

On or about September 26, 2018, the casing that Dufrene represented as meeting the API specifications of N-80 grade, parted during use under certain aforesaid conditions. After the casing failed, tests confirmed that the casing supplied by Dufrene did not meet the API specifications for N-80 grade casing pipe. Dufrene warranted that the casing would meet N-80 grade casing specifications and standards. The deficient, lesser quality casing supplied to Premience constitutes a direct breach of Dufrene's warranty. The pipe supplied by Dufrene was not fit for its intended use by Premience.

### Claim Three – Dufrene Negligence

28.

Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding Paragraphs as though those allegations were set forth herein in their entirety.

29.

Additionally or alternatively, Dufrene's negligence caused damages to Premience and the JV Miller No. 2 Well.

30.

Dufrene owed a duty to Premience to use reasonable care in maintaining, labelling, and inspecting the casing pipe that it supplied to Premience.

31.

Dufrene breached its duty to Premience in several respects, including but not limited to:

    a) Dufrene negligently inspected the casing pipe;

b) Dufrene negligently maintained casing pipe, in that it intermixed different grades of casing pipe together;

c) Dufrene negligently delivered the casing pipe, in that it intermixed different grades of casing pipe together and did not inform Premience of the situation;

d) Dufrene negligently labelled the casing pipe, labelling the casing pipe supplied to Premience as "N-80" when the pipe was actually of "K-55" grade;

e) Dufrene negligently represented the casing pipe sold to Premience had a higher quality, weight, and collapse pressure than it did; and

f) Dufrene negligently failed to adequately test the casing pipe for defects.

32.

The breach of duty by Dufrene was a direct and proximate cause of the parting of the casing pipe and Premience's damages, to include, but not limited to, monies spent mitigating the damages caused by the parted casing, third party expenses, and additional costs to be incurred for future development of the JV Miller No. 2 Well.

### Claim Four - ENGT Negligence

33.

Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding Paragraphs as though those allegations were set forth herein in their entirety.

34.

Additionally or alternatively, ENGT's negligence caused damages to Premience and the JV Miller No. 2 Well.

35.

ENGT owed a duty to Premience and the public to use reasonable care in the performance of the inspection and grading services it undertook or was expected to undertake for Dufrene on the casing pipe that Dufrene supplied to Premience.

36.

ENGT breached its duty to Premience in several respects, including but not limited to:

a) ENGT negligently inspected the casing pipe;

b) ENGT negligently tested the casing pipe;

c) ENGT negligently delivered the casing pipe to IOS for ultimate delivery to Dufrene, in that it intermixed different grades of casing pipe together and did not inform IOS or Premience of the situation;

d) ENGT negligently represented that the casing pipe delivered to IOS for ultimate delivery to Premience had a higher quality, weight, and collapse pressure than it did; and

e) ENGT negligently failed to adequately test the casing pipe for defects.

37.

The breach of duty by ENGT was a direct and proximate cause of the parting of the casing pipe and Premience's damages, to include, but not limited to, monies spent mitigating the damages caused by the parted casing, third party expenses, and additional costs to be incurred for future development of the JV Miller No. 2 Well.

### Claim Five - IOS Negligence

38.

Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding Paragraphs as though those allegations were set forth herein in their entirety.

39.

Additionally or alternatively, IOS negligence caused damages to Premience and the JV Miller No. 2 Well.

40.

IOS owed a duty to Premience and the public to use reasonable care in the performance of the inspection, grading, color-coding and banding (labelling) services it undertook or was expected to undertake for Dufrene on the casing pipe that Dufrene supplied to Premience.

36.

IOS breached its duty to Premience in several respects, including but not limited to:

a) IOS negligently inspected the casing pipe;

b) IOS negligently tested the casing pipe;

c) IOS negligently delivered the casing pipe to Dufrene, in that it intermixed different grades of casing pipe together and did not inform Premience of the situation;

d) IOS negligently color-coded, banded and labelled the casing pipe, in that it color-coded, banded and labeled the casing pipe supplied to Premience as "N-80" when the pipe was actually of "K-55" grade;

e) IOS negligently represented that the casing pipe delivered to Premience had a higher quality, weight, and collapse pressure than it did; and

f) IOS negligently failed to adequately test the casing pipe for defects.

32.

The breach of duty by IOS was a direct and proximate cause of the parting of the casing pipe and Premience's damages, to include, but not limited to, monies spent mitigating the damages caused by the parted casing, third party expenses, and additional costs to be incurred for future development of the JV Miller No. 2 Well.

### Prayer for Relief

**WHEREFORE,** Plaintiff, Premience Energy, LLC, respectfully prays that:

1. Defendants, Dufrene Pipe Company, Inc., Energy Technology Manufacturing & Threading, LLC and IOS/PCI, LLC each be served with a copy of this Petition, and that they be required to respond in accordance with the applicable law;

2. That after all legal delay and due process, that this Court render judgment in favor of Plaintiff, Premience Energy, LLC, and against Defendants, Dufrene Pipe Company, Inc., Energy Technology Manufacturing & Threading, LLC and IOS/PCI, LLC, *in solido*, for all actual damages, lost revenues, costs and expenses due as a result of Defendants' actions, including but not limited to the extra expenses incurred in drilling and completing the JV Miller No. 2 Well in the Completion Zone and the additional costs, expenses and losses to be incurred in completing and/or attempting to recomplete, side-track or re-drill the JV Miller No. 2 Well to capture and produce the remaining productive sands and zones logged in the JV Miller No. 2 Well, and all other such relief that this Honorable Court shall deem just and reasonable.

Respectfully submitted, this 30th day of March, 2020.

GORDON, ARATA, MONTGOMERY, BARNETT,
MCCOLLAM, DUPLANTIS & EAGAN, L.L.C.

By: _____
Samuel E. Masur (La. Bar #1221)
Armistead M. Long (La. Bar # 33949)
Bryan Dupree (La. Bar #38202)
400 E. Kaliste Saloom Rd., Suite 4200
Lafayette, LA 70508-8517
Email: smasur@gamb.law
along@gamb.law
bdupre@gamb.law
Telephone: (337) 237-0132
Facsimile: (337) 237-3451

*Counsel for Plaintiff,* Premience Energy, LLC

**TO BE SERVED:**
Sheriff please serve:

**Dufrene Pipe Company, Inc.**
*through its Counsel of Record:*
John E. Baay II
Michael D. Cangelosi
Geiger, Laborde & Laperouse, LLC
One Shell Square
701 Poydras Street, Suite 400
New Orleans, LA 70139

**Energy Technology Manufacturing & Threading, LLC**
*through its Registered Agent:*
George M. Sfeir
3639 Ambassador Caffery Parkway, Suite 530
Lafayette, LA 70503

**IOS/PCI, LLC**
*through its Registered Agent:*
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802